IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TRESSY ROBINSON,**<br><br>               **Plaintiff,**<br><br>v.<br><br>**CITY OF ATLANTA, GEORGIA; POLICE CHIEF RICHARD J. PENNINGTON; OFFICER JIMMY C. FOSTER; OFFICER E. RICHARDSON-WILLIAMS; and OFFICER DELORES R. CROWDER; in their Individual Capacities,**<br><br>               **Defendants.** | 1:06-cv-723-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [34]; Defendants' Motion for Summary Judgment [42], and Defendants' Motion to Amend Statement of Material Facts [58].[1]

---

[1] Plaintiff does not oppose Defendants' Motion to Amend, thus it is **GRANTED**.

## I.    BACKGROUND

This is a § 1983 claim brought by Plaintiff for the alleged violation of her constitutional rights when she was mistakenly arrested on a valid warrant and detained for six hours before being released.

On September 13, 1995, the Monroe County Sheriff's Office ("MCSO") in Monroe County, Georgia, issued an arrest warrant for Tammie Robinson, an African-American female, for one count of misdemeanor check fraud. (Pl. Statement of Material Facts ("PSMF") ¶ 2.) Tammie Robinson wrote the check to the Family Dollar Store in Monroe County using identifying information stolen from Plaintiff Tressy Robinson. (Id. at ¶ 1.) The warrant identified Plaintiff's date of birth, Social Security number, height, and weight, however, it gave the subject's first name as "Tammie" and identified the subject as African-American. Plaintiff is white. (Def. Amended Statement of Material Facts ("DASMF"), at ¶¶ 6-8.) Plaintiff was not the perpetrator of the check fraud and had never been to Monroe County, Georgia. (PSMF, at ¶ 4.)

On March 28, 2004, Plaintiff was detained by the United States Customs Service ("Customs")[2] at Hartsfield-Jackson International Airport after returning from a vacation to Mexico with her husband. At 8:47 p.m., a Customs agent received a "name hit" on Plaintiff after running her information through the FBI's National Criminal Information Center ("NCIC") database. The United States Customs Service detained Plaintiff on the outstanding warrant from Monroe County. At 8:54 p.m., the MCSO confirmed to Customs that it held a valid warrant for the subject Tammie Robinson. Neither the "name hit" nor the response by MCSO included any information regarding the subject's race. (Id. at ¶ 11.)

At 9:44 p.m., Plaintiff's husband called her parents, who contacted Troup County Commissioner Robert Buck Davis ("Davis"). (Id. at ¶ 18.) At around 10:20 p.m., Davis called Troup County Sheriff Donnie Turner. At 10:30 p.m., Sheriff Turner called the MCSO to determine whether Plaintiff was subject to an arrest warrant. Turner and MCSO NCIC Operator Elaine Hewitt ("Hewitt") determined that Plaintiff was not wanted on the Monroe County warrant, because Plaintiff is white and the warrant sought an African-American.

---

[2] Customs is operated under the United States Department of Homeland Security and is currently known as U.S. Customs and Border Protection.

At 10:40 p.m., Defendant Jimmie C. Foster ("Foster"), an Atlanta Police Department ("APD") officer stationed at the airport, was dispatched to transport Plaintiff to the Clayton County Pre-trial Detention Center.[3] (Id. at ¶ 22.) Defendant APD officer Delores R. Crowder ("Crowder") was dispatched to assist Foster. When Defendant Foster arrived at the Customs area, he reviewed a copy of the NCIC information regarding the warrant seeking Robinson. Foster and Crowder took custody of Plaintiff when they arrived at the Customs area.

Also around 10:40 p.m., Sheriff Turner called APD's Airport Precinct to inform them that Plaintiff was not wanted and should be released. Plaintiff alleges that Defendant Richardson-Williams, who was on duty answering telephones at the APD Airport Precinct, answered the telephone.[4] Plaintiff alleges Sheriff Turner explained that Plaintiff was not the subject of the warrant. She further alleges that Defendant Richardson-Williams responded that because it was not a Troup County

---

[3] There is a dispute as to whether Customs officials arrested Plaintiff or whether Plaintiff was arrested by the Atlanta Police Department. This distinction is immaterial.

[4] The parties disagree as to what happened during the telephone conversations. Defendant Richardson-Williams testified that she has no recollection of receiving any telephone calls on the day that Plaintiff was detained and does not recall any conversation with Sheriff Turner. For purposes of deciding the motion, the Court assumes that Plaintiff's version of the facts is true.

warrant but one issued by Monroe County, as Troup County Sheriff the matter was not Turner's concern.  (Id. at ¶ 35.)  Sheriff Turner told Richardson-Williams that the Monroe County Sheriff's Department would send a teletype stating that Plaintiff should not be held.

MCSO Operator Hewitt also called the APD Airport Precinct and spoke with Richardson-Williams.  Pursuant to Richardson-Williams's request, Hewitt sent to APD a facsimile on MCSO letterhead stating that Plaintiff is a white female and requesting her release.  When Hewitt spoke again with Richardson-Williams, she confirmed to Hewitt that she had received the facsimile and stated that she would make sure it "would go upstairs" to Customs.  Richardson-Williams also stated, however, that the matter was within Customs' sole discretion at that time.  (PSMF, at ¶ 40, 41.)

Defendants Foster and Crowder transported Plaintiff to the Clayton County Pre-trial Detention Center at approximately 12:45 a.m.[5]  The trip took roughly

---

[5] Defendants Crowder and Foster both deny they were aware Plaintiff was not a wanted person while she was in their custody.  Although Plaintiff argues that the evidence supports the inference that Crowder and Foster learned from Richardson-Williams or from the shift supervisor Sgt. Ebb that Plaintiff was not wanted, there is no evidence that this information was communicated to them while Plaintiff was in their custody.  In any event, this issue is not dispositive.

thirty minutes, and Crowder and Foster arrived with Plaintiff at around 1:15 a.m. (Id. at ¶ 46.)  Plaintiff was cleared of all charges and released at approximately 3:00 a.m.  (Id. at ¶ 72.)  In total, Plaintiff spent approximately six hours in custody. (Id. at ¶ 13.)

On March 28, 2006, Plaintiff filed this action, and on September 15, 2006, she filed her First Amended Complaint.  (Am. Compl. [29].)  Plaintiff asserts a single claim under 42 U.S.C. § 1983 for violations of her Fourth Amendment rights against the City of Atlanta, Police Chief Richard Pennington,[6] Foster, Crowder, and Richardson-Williams, all in their individual capacities.  Plaintiff claims her constitutional rights were violated when Defendants "illegally detained, arrested and incarcerated [Plaintiff] without probable cause," (id. ¶ 21), and the violations of her rights were caused by inadequate City of Atlanta policies, procedures, training, and supervision of law enforcement officers.

On September 29, 2006, Defendants filed their Answer to the First Amended Complaint.  On the same day, Defendants also filed a Motion to Dismiss, arguing that the recent Eleventh Circuit decision in Chapman v. City of Atlanta, 192 F.

---

[6] Defendant Pennington is sued in both his official and individual capacity.

App'x 922 (11th Cir. 2006) (unpublished), bars Plaintiff from asserting a claim.[7]

On November 20, 2006, Defendants filed their Motion for Summary Judgment. (MSJ [42].)  They primarily argue that: 1) Plaintiff was not deprived of a constitutional right and thus cannot assert a § 1983 claim, and 2) Plaintiff has failed to identify a City of Atlanta policy or custom that violated her constitutional rights.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a

---

[7] Defendants filed their Motion to Dismiss on the same day they filed an Answer to Plaintiff's First Amended Complaint.  Thus, Plaintiff argues that the Motion to Dismiss is procedurally flawed because a Rule 12(b)(6) motion must be made *before* filing an answer.  Fed. R. Civ. P. 12(b)(6).  Presumably, Defendants do not challenge this contention because they did not file a Reply brief in response.  The Court agrees that a Rule 12(b)(6) motion must be filed before filing an Answer.  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004); see also Byrne v. Nezhat, 261 F.3d 1075, 1094 n.35 (11th Cir. 2001).  Defendants' Motion to Dismiss is therefore **DENIED**.

genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The Court views all facts in the light most favorable to the nonmoving party, but only if there is a genuine dispute as to those facts. Scott v. Harris, 127 S. Ct. 1769, 1776 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986).

B.   Section 1983 Claim

Plaintiff claims Defendants arrested the wrong person on the warrant, and that at some point information became available to Defendants sufficient to disclose the discrepancy between Plaintiff and the person described in the warrant, thus Defendants violated her Fourth Amendment rights.  The Court must therefore determine if Defendants' actions in arresting Plaintiff on the warrant and holding her for about six hours before determining she was not the person identified in the warrant violated her constitutional rights.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law.  42 U.S.C. § 1983.  The Fourth Amendment protects the right of citizens not to be arrested without probable cause.  Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002).  Here, Plaintiff was mistakenly arrested pursuant to a valid warrant.  The Eleventh Circuit has adopted a "reasonable mistake" standard to evaluate a § 1983 claim "when the police have a valid warrant -- as opposed to just probable cause -- to arrest someone, but mistakenly arrest someone else due to a misidentification."  Rodriguez, 280 F.3d at 1346.

To determine whether a misidentification arrest resulted from a "reasonable mistake," the Court must evaluate the totality of the circumstances surrounding the arrest. Rodriguez, 280 F.3d at 1347. Rodriguez involved the mistaken arrest of an individual based on a properly issued warrant. In determining if the arrest was based on a reasonable mistake, the Court compared the information in the warrant to personal information about the plaintiff and observed that the plaintiff's name, sex, age, and race were identical to the information in the warrant, that the Social Security numbers were similar, that the addresses were in neighboring towns, that the two individuals were born in the same state, and that they had similar tattoos. Id. at 1347. The Court contrasted these similarities with one material difference in the height of the individual arrested and the subject of the warrant. Finding the misidentification to be a "reasonable mistake," the Court concluded that a reasonable mistake cannot "be transformed into an unreasonable mistake over such a small difference, given all the circumstances." Id. at 1347-48.

The Eleventh Circuit's recent decision in Chapman v. City of Atlanta, decided after Plaintiff filed this case, is similar to the facts here and on point. Chapman, 192 F. App'x 922 (11th Cir. 2006). In Chapman, the identifying information described in the warrant matched Plaintiff's identifying information in

almost every material respect. The full names were identical, the physical descriptions were similar, the date of birth was identical, and the Social Security numbers were the same, apart from a transposition of the first two numbers. The Chapman plaintiff based her claim of false arrest on the fact that the warrant was for a black woman and she was white. The Chapman court held the mistaken arrest of the plaintiff was a reasonable mistake and thus was not a violation of plaintiff's Fourth Amendment rights.[8]

The Chapman court reiterated that "in the face of many similarities, one material difference will not transform a reasonable arrest into an unreasonable one . . . . That test governs here, and we conclude that, given the totality of the circumstances, [the plaintiff's] arrest was reasonable even in the face of an obvious racial discrepancy." Id. at 924 (citing Johnson v. Miller, 680 F.2d 39, 42 (7th Cir. 1982)). Here, the subject of the warrant had the same date of birth, Social Security number, height, weight, and last name as Plaintiff. The only discrepancy was that the warrant listed the subject's first name as "Tammie" rather than "Tressie" and sought an African-American, while Plaintiff is white. The Court concludes that,

---

[8] The Chapman plaintiff was detained for 18 hours.

like in Chapman, the mistake Defendants made in detaining Plaintiff after receiving the "name hit" was a reasonable one.

Plaintiff argues that Chapman and Rodriguez do not apply here because in this case, Sheriff Turner, a sheriff from a different county from the warrant, and Hewitt, a NCIC Operator from the same county as the warrant, "provided objectively verifiable, exculpatory information to the Defendants while [Plaintiff] was in their custody." (Opp. to MSJ [43], at 18.)[9] Thus, while Plaintiff does not appear to contest that the mere first name and race discrepancy would be a reasonable mistake, she argues this case is distinguishable because Sheriff Turner and Hewitt called APD to notify them of the mistake. Plaintiff's argument is misplaced and makes unwarranted inferences from the facts in this case. While it is true that a reasonableness inquiry also requires an evaluation of the information claimed to have disclosed the misidentification, the evaluation does not compel a different conclusion in this case.

---

[9] Plaintiff also argued that the Motion for Summary Judgment should be denied because Defendants did not support their original Statement of Material Facts with citations to evidence as required by Local Rule 56.1(B)(1). (Opp. to MSJ [43], at 13.) In response, Defendants filed an Amended Statement of Material Facts with the required citations to evidence. (Def. Am. Statement of Material Facts [58].)

First, and most importantly, Sheriff Turner and Hewitt did not telephone the APD Airport Precinct until *several hours after* Plaintiff was detained. Thus, Defendants did not have this "exculpatory" evidence available to them at the time of Plaintiff's detention, and the phone calls could not prevent Plaintiff's arrest. At the time Plaintiff was detained, Defendants had almost identical information as the Defendants in Chapman. In fact, Plaintiff does not seriously challenge the initial arrest and detention.

Second, simply because Sheriff Turner and Hewitt faced administrative hurdles when they reached Defendant Richardson-Williams, such as Hewitt's being required to send a facsimile to APD[10] and Turner's being told that the matter was outside his jurisdiction, does not render Plaintiff's arrest a constitutional violation.[11] This was a matter involving three agencies – Customs, which initially

---

[10] In fact, it was quite reasonable to require Hewitt to send a facsimile stating the Plaintiff was not wanted on MCSO letterhead. This policy prevents a person from calling and impersonating an authority figure to have a suspect released from custody.

[11] Plaintiff focuses heavily on Defendants' failure to release her immediately after receiving exculpatory information, rather than on her actual arrest. Thus, Plaintiff appears to challenge her continued detention under the Fourteenth Amendment rather than her arrest. Plaintiff, however, clearly stated that she does not assert a Fourteenth Amendment due process claim in her Response to the Motion for Summary Judgment. (Opp. to MSJ, at 21 n.12 [43].) The Court notes

identified and detained Plaintiff, the APD, which transported Plaintiff to the pre-trial detention center, and the Monroe County Sheriff's Office, which issued the warrant.  Under these circumstances, it is expected that certain procedures must be followed and considerations made in order to release a suspect from custody, and that a detained individual will not be released immediately upon notification that the person arrested is not wanted.  Moreover, there simply is no evidence that Defendants purposefully or maliciously delayed or ignored Sheriff Turner and Hewitt's message.  The evidence indicates their intention was to release upon proper information from the county issuing the warrant, and when the information was received, Plaintiff was released.

---

that any § 1983 claim based upon a violation of the Fourteenth Amendment would also fail here.  In Baker v. McCollan, 443 U.S. 137 (1979), the Supreme Court explained:  "The Constitution does not guarantee that only the guilty will be arrested . . . . The Fourteenth Amendment does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished 'without due process of law.'"  Id. at 145.  The Eleventh Circuit in Chapman also held that the plaintiff's Fourteenth Amendment rights had not been violated when she was mistakenly arrested and detained for 18 hours.  It explained: "[a]n official executing an arrest warrant is not required by the Constitution to investigate independently every claim of innocence, even if the claim is based on mistaken identity.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim."  Chapman, 192 F. App'x at 924-25 (citing Baker, 443 U.S. at 145-46)).

The Court has carefully examined the totality of the circumstances and finds that the officers who mistakenly arrested Plaintiff made a "reasonable mistake," and "committed no constitutional violation upon which to base a section 1983 constitutional false-arrest claim." Rodriguez, 280 F.3d at 1349. Viewing all the facts in the light most favorable to the Plaintiff, the Court necessarily concludes that the record taken as a whole would not lead a rational trier of fact to find for the Plaintiff. Plaintiff's § 1983 claim fails, and summary judgment must be entered in Defendants' favor.

### III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [42] is **GRANTED**. Defendants' Motion to Dismiss [34] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Amend Statement of Material Facts [58] is **GRANTED**.

**SO ORDERED**, this 26th day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE